# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JAMES HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.:2:22-cv-00262 |
| ) | |
| NORTHWEST INDIANA MAJOR CRIMES ) | |
| TASK FORCE; TOWN OF GRIFFITH, INDIANA;) | |
| CITY OF HAMMOND, INDIANA; CITY OF ) | |
| PORTAGE, INDIANA; TOWN OF PORTER, ) | |
| INDIANA; CITY OF VALPARAISO, INDIANA; ) | |
| MICHAEL SOLAN, SR.; MICHAEL SOLAN, JR.;) | |
| JASON GORE; WILLIAM MESICH; GREGORY ) | |
| MANSE; JANIS REGNIER; MICHAEL VEAL, ) | |
| JEFFREY BALON and UNKNOWN OFFICERS ) | |
| INVOLVED IN MURDER INVESTIGATION OF ) | |
| LARRY PUCALIK. ) | |
| Defendants. ) | |

## AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND

Comes now Plaintiff James Hill (HILL) by his counsel King & Murdaugh, LLC by Scott King and Lakeisha Murdaugh and The Region Lawyers by Russell Brown and alleges as follows:

1. At the age of 17, HILL was arrested in his high school classroom on November 18, 1980 and accused of committing the offenses of rape; robbery and unlawful deviate conduct on October 5, 1980. HILL was accused of committing those offenses in concert with Larry Mayes (MAYES) who was charged at or about the same time as HILL.

2. Unable to post bond, HILL remained in custody through his jury trial on those allegations, a trial that resulted in convictions on February 11, 1982. Those convictions resulted in a sentence of 35 years imprisonment in the Indiana Department of Corrections.

3. HILL was released from prison in May, 1998 after serving more than 17 years in continuous incarceration for those convictions.

4. In 2003, HILL initiated a state post-conviction relief proceeding in the Lake County (Indiana) Superior Court, cause number 45G01-0310-PC-000011 challenging the validity of his convictions.

5. HILL amended that petition on December 7, 2005 and on October 6, 2010 the state court granted HILL's said petition and set aside his convictions based on a finding that the state failed to disclose exculpatory evidence prior to his trial.

6. On October 4, 2010 HILL initiated a suit in this Court under cause number 2:10-cv-00393 naming the City of Hammond, Indiana and several members of the Hammond, Indiana Police Department as defendants, seeking damages under 42 U.S.C §1983 for his said wrongful conviction. That trial concluded in a jury verdict awarding Mr. Hill $25 million in compensatory damages and $500,000 in punitive damages.

7. In separate proceedings, MAYES conviction for the same offenses was set aside on December 20, 2001 in cause number 45G01-0310-PC-11. MAYES then initiated a civil rights violation complaint in this Court (2:03-cv-00379) against the City of Hammond, Indiana and, among others, defendant Michael Solan, Sr. (SOLAN. SR.), the Hammond detective in charge of the investigation that resulted in HILL's and MAYES' convictions. On August 22, 2006, a jury awarded damages to MAYES in the amount of $9,000,000.00. On March 10, 2008 MAYES reached a settlement with the City of Hammond, Indiana on that jury award.

8. The involvement of City of Hammond, Indiana police officers, including defendant Michael Solan, Sr., in the investigation and prosecution of HILL's offense of conviction

was based upon their belief that the perpetrators of that offense and others were also responsible for the shooting death of off-duty Hammond police officer Larry Pucalik during a robbery attempt at a Hammond hotel on November 14, 1980 where he was working security.

9. In or about 2009, defendant Jason Gore (GORE), an agent with ATF who worked with defendant Michael Solan, Jr. (SOLAN, JR.), the son of defendant SOLAN, SR. began investigating MAYES' and HILL's possible involvement in Pucalik's homicide.

10. In or about 2011, the Northwest Indiana Major Crimes Taskforce (TASKFORCE) announced the reopening of an investigation into Pucalik's homicide.

11. On June 22, 2012 HILL, MAYES and Pierre Catlett (CATLETT) were charged with Pucalik's murder in the Lake County Superior Court. HILL was arrested; detained and thereafter was released on bond pending trial.

12. On March 27, 2014 the said murder charge was dismissed on the state's motion.

13. On March 30, 2016 U.S. District Court Judge Moody denied motions for summary judgment by defendants herein City of Hammond and SOLAN, SR. in HILL's pending complaint for his wrongful conviction in 1982.

14. On September 1, 2016 HILL and CATLETT were again charged with Pucalik's murder in the Lake County Superior court. HILL was placed in custody on September 2, 2016 and released on bond pending trial on November 21, 2016.

15. On August 31, 2018 HILL was convicted by a jury for Pucalik's homicide; taken into custody and sentenced to 47 years imprisonment.

16. After HILL appealed his conviction and sentence, on November 19, 2019 the Indiana Court of Appeals affirmed the conviction but remanded the case to the Superior Court for a new sentencing hearing.

17. On June 26, 2020 HILL was sentenced to 40 years imprisonment.

18. Thereafter, counsel for HILL again initiated an appeal to the Indiana Court of Appeals. During the pendency of that appeal, counsel discovered exculpatory evidence related to HILL's conviction for murder that had not been disclosed by the state prior or during HILL's trial. HILL's counsel sought and obtained a stay of his appeal and the case was remanded to the state trial court on January 11, 2021.

19. Thereafter, HILL's counsel filed a motion for relief from judgment with the trial court seeking to overturn HILL's conviction based upon the state's failure to disclose exculpatory evidence prior to trial. That motion was granted with the state's agreement on May 11, 2021 and HILL was released from prison.

20. On March 17, 2022 the murder charge against HILL was dismissed on motion by the state.

21. HILL's arrests; detentions; prosecutions; conviction and imprisonment for Pucalik's murder were the product of unconstitutional and unlawful efforts by the defendant law enforcement officers, acting individually and/or in concert, pursuant to state and municipal policy and custom, to use any means necessary to obtain a conviction and to seek to avoid liability and potential consequent damages faced by defendant SOLAN, SR. for HILL's 1982 wrongful conviction and imprisonment that is the subject of the complaint filed by HILL in 2010 currently pending in this Court. Acting individually and in concert, the Defendants and others deliberately failed to reveal exculpatory

information; failed to investigate other potential suspects in the homicide of Pucalik and fabricated evidence from witnesses that was then presented at trial.

22. As a direct and proximate result of the Defendants' intentional acts and omissions, HILL sustained injuries and damages including, among others: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet; sleep; personal contact; educational opportunity; personal fulfillment; sexual activity; family relations; reading; television; movies; travel; enjoyment and expression.

23. In addition to compensating HILL for these continuing injuries, this action seeks to redress the unlawful governmental policies and practices pursuant to which the Defendants, acting under color of law both independently and in concert, violated his rights as guaranteed by the Fourth; Fifth; Sixth; Eighth and Fourteenth Amendments to the United States Constitution and the laws of the State of Indiana.

## JURISDICTION

24. This Court has federal question jurisdiction pursuant to 28 U.S,C. § 1331, over the claims

## VENUE

25. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of Indiana, Hammond Division, the judicial district in which the claims arose and in which all Defendants reside or conduct business.

## PARTIES

26. Plaintiff HILL is and, at all times material to this Complaint, was a resident of the State of Indiana.

27. Defendant Northwest Indiana Major Crimes Taskforce (TASKFORCE) is a voluntary association of certain federal; state; county and municipal law enforcement agencies in existence since June, 2006. Each of the named government entities in this complaint are named members and participants in the TASKFORCE, the stated mission of which is the investigation of violent crime in northwest Indiana. Investigators for the TASKFORCE are law enforcement agents and officers assigned or otherwise designated by the governmental entities that employ them to the TASKFORCE.

28. Each of the individually named Defendants are and/or were at all times relevant to this Complaint employed by one of the named governmental unit Defendants as agents; officers; sergeants; detectives and/or supervisors and assigned to and/or otherwise worked under the auspices of the TASKFORCE in the investigation of Pucalik's homicide.

29. Each of the individually named municipalities are governmental agencies located in the Northern District of Indiana and are members of the TASKFORCE.

## FACTS

30. On November 14, 1980 Hammond Police Officer Lawrence Pucalik was shot and killed in an armed robbery attempt while working security while off duty at a Hammond hotel.

31. Officers of the Hammond, Indiana police department initiated an investigation into Pucalik's death under the principal leadership and direction of then Hammond Police Lieutenant SOLAN, SR.

32. Among the clues developed during the course of the investigation were statements and other evidence that one of the robbers carried a blue denim bag into the hotel during the robbery and a hubcap was recovered near the hotel driveway. These clues, in turn, led investigators to a then ongoing investigation of a rape and robbery reported by complaining witness LJ to the Gary Police Department on October 5, 1980 wherein LJ stated that her assailant demanded that she put her money in a blue denim bag.

33. Additionally, the investigation regarding the hubcap recovered near the site of Pucalik's homicide led police to a nearby apartment complex where they obtained a statement from tenant Leroy Ford (FORD) that he observed 2 men leave a blue car and enter a red car and drive off from the apartment complex the night of the Pucalik homicide. This, in turn, led police to the recovery of a 1973 blue Chevrolet Impala automobile that was believed to be the source vehicle of the hubcap recovered near the scene of the homicide.

34. A subsequent search of that vehicle yielded a handwritten note by DC who, along with her friend TD, were picked up while hitchhiking eastbound on Interstate 80/94 near Grant St. in Lake County Indiana by 2 black males who later switched from another vehicle to the blue automobile where the note was discovered. DC reported that both she and TD were sexually assaulted while in the blue car and that she, DC, was sexually assaulted by both men and later wiped herself off with a white cloth that was also discovered in the blue car.

7

35. During the course of the investigation, detectives discovered that victims of a robbery of a Kentucky Fried Chicken (KFC) restaurant located in Hammond, Indiana, which occurred October 19, 1980, said two men came in and one had a blue denim bag.

36. HILL was arrested and charged with the rape and robbery of LJ on November 18, 1980; with the (KFC robbery) on July 17, 1981 and with the rape and confinement of DC and TD on or about January 12, 1981, all in the Lake County Superior Court. SOLAN, SR. and other Hammond police officers participated in the investigations and charging decisions in all of those cases due to their belief that HILL along with MAYES and CATLETT were responsible for Pucalik's homicide. SOLAN, SR. served as the designated case officer during HILL's trial and conviction for the LJ assault.

37. After HILL's February 25, 1982 sentencing on the LJ prosecution, the other then-pending charges against HILL referenced in paragraph 35 above were dismissed on motion by the state of Indiana.

38. Investigative efforts into Pucalik's homicide waned thereafter but revived in 2009 when GORE, working as a special agent in the Bureau of Alcohol, Tobacco and Firearms along with SOLAN, JR., received information from a subject of an investigation pertaining to HILL and MAYES prior association with each other. After conferring with SOLAN, JR. regarding that information, GORE consulted SOLAN, SR. and, thereafter, contacted the TASKFORCE which "reopened" the investigation into Pucalik's homicide in 2011. All of these events occurred after MAYES' and HILL's convictions in the LJ case had been set aside by the state court due to *Brady* violations by SOLAN, SR. and others; MAYES' lawsuit in federal court against SOLAN, SR. and others that yielded a 9 million dollar

verdict against SOLAN, SR. in 2006 and HILL's filing of a federal civil rights action against SOLAN, SR. and others in 2010.

39. In 2012, HILL, MAYES and CATLETT were charged with Pucalik's murder in the Lake Superior Court. That case was dismissed on motion of the state of Indiana on March 27, 2014.

40. Both SOLAN, SR.'s and the City of Hammond's motions for summary judgment were denied by U.S. Senior District Judge Moody on March 30, 2016.

41. Five (5) months later, HILL was again charged with Pucalik's murder in the Lake County Superior court on September 1, 2016.

42. On August 31, 2018 HILL was convicted of Pucalik's murder in a jury trial and on October 3, 2018 was sentenced to a term of FORTY SEVEN (47) YEARS imprisonment in the Indiana Department of Corrections.

43. After HILL's conviction, SOLAN, SR. and City of Hammond filed a Supplemental Motion for Summary Judgment in the pending civil suit, again attempting to prevent that case from going to a jury trial.

44. As a result of HILL's appeal of that conviction to the Indiana Court of Appeals, his case was remanded to the trial court for resentencing and on June 26, 2020 HILL was resentenced to FORTY (40) YEARS imprisonment.

45. On September 9, 2020 HILL again appealed his sentence to the Indiana Court of Appeals.

46. During the pendency of that appeal, HILL discovered that a substantial number of significant exculpatory statements by witnesses presented by the State in his trial had not been disclosed to the defense prior to or during his 2018 trial for Pucalik's murder. That undisclosed evidence included the following:

A. L.J. testified in HILL's 2018 murder trial that the perpetrator of the October 5, 1980 was HILL based upon a then current photograph of HILL and that he was in possession of a blue bag that other witnesses identified as the blue bag left at the scene of the homicide. On February 24, 2011, L.J. was interviewed by Portage Police Department Detective Janis Regnier (REGNIER) on videotape wherein she stated that a photograph of the blue bag appeared to have changed color; that she did not remember any of the pictures of a line-up she participated in and identified HILL in 1980 and was swabbed for DNA testing of the blue bag. REGNIER failed to turn over a cop of this interview and/or a report accurately summarizing the interview to the prosecuting attorney. Therefore, none of this evidence, including the fact that the interview took place, was disclosed to the defense prior to the 2018 trial.

B. T.D. testified in HILL's 2018 trial that HILL, as depicted in a 1980 photograph, was one of the perpetrators (along with MAYES) of a November 12, 1980 sexual assault upon her and D.C. that occurred in the automobile the Hammond police identified as having been used in the Pucalik homicide. On February 9th and 16th, 2011 T.D. was interviewed by REGNIER and Portage Police Department Detective William Mesich (MESICH) and the interview of the 16th was videotaped. In that videotape, T.D. apologizes for having initially identified a "Mr. Osborn" as one of the assailants and expresses uncertainty that any of the photographs of automobiles shown her by REGNIER depicted the car where she and D.C. were assaulted on November 12, 1980. At several points in the interview, REGNIER pointed to a photograph of an automobile and tells T.D. that it portrayed the car at issue. T.D. is shown as unable to select HILL's photograph from a photographic line-up and twice is unable to select

10

HILL's photograph even after REGNIER pointed to it.  Later in that interview, T.D. states: "If only I saw a picture of him...." REGNIER and MESICH failed to turn over a copy of this interview and/or a report that accurately summarized the interview to the prosecuting attorney. Therefore, none of this evidence, including the fact that the interviews took place, were ever disclosed to HILL prior to his 2018 trial.

C. At the 2018 trial, M.B. and J.T. testified that on October 19, 1980 they were robbed by assailants using the blue bag referenced above and they identified a 1980 photograph of HILL as one of the assailants. On February 11. 2011 J.T. was interviewed on videotape by Griffith Police Department detective Gregory Mance (MANCE) regarding that robbery. In that interview, she stated that she did not recall putting money into a bag at the time of the robbery; that she recalled that the restaurant kept its money in blue bags and that a 1980 yearbook picture of HILL, "looked like him." On March 8, 2011 M.B. was interviewed on videotape and is told by Porter Police Department Detective Mike Veal (VEAL) that photographs in front of her were HILL before M.B. identified them as portraying her assailant and that the blue bag "appeared" to be the bag used in her robbery. MANCE nor VEAL turned over a copy of the interviews and/or a report that accurately summarized the interview to the prosecuting attorney. Therefore, none of this evidence, including the fact that the interviews took place, were disclosed to HILL prior to his 2018 trial.

D. At the 2018 trial, Leroy Ford (FORD) testified that in November, 1980 he resided in an apartment complex where the vehicle believed to have been used by Pucalik's assailants had been recovered. He testified that on the night of November 14, 1980 he saw two (2) people exit that car and get into a red vehicle that he identified as a car

11

owned by a relative of CATLETT. On March 9, 2011 FORD was interviewed on audiotape by Special Agent Gore and Valparaiso Police Department Detective Jeffrey Balon (BALON). In that statement, FORD referenced a statement he made in 1980 that the vehicle he identified at trial was NOT the vehicle he saw in 1980 but shortly thereafter changed his statement to the Hammond police. BALON nor GORE turned over a copy of the audio tape and/or a report that accurately summarized the contents of the phone call to the prosecuting attorney. Therefore, none of this evidence was ever disclosed to HILL prior to his 1980 trial.

E. Subsequent to HILL's conviction being set aside, HILL further discovered that there was a file maintained at the City of Hammond Police Department with potential suspects responsible for the PUCALIK homicide. This file was not found in the location where expected pursuant to the policy and procedures of the Hammond Police Department. The file was deliberately misfiled by SOLAN, SR. or at the direction of SOLAN, SR. The name of those potential suspects or any investigation that was conducted regarding them was ever turned over to HILL prior to trial.

47. All of the evidence outlined in paragraph 46 and its subparts was *Brady* evidence as it was either exculpatory or impeachment evidence.

48. Additionally, all of the evidence outlined in paragraph 46 and its subparts was material to HILL's defense and had said information been disclosed, it would have likely produced a different result.

49. Upon discovering the information related above, HILL sought and obtained a stay of his then pending appeal to the Indiana Court of Appeals and a remand to the trial court. HILL then filed a Motion for Relief from Judgment.

50. On May 11, 2021 HILL's conviction for Pucalik's murder was vacated and on March 17, 2022 the case was dismissed in its entirety on motion by the state.

51. SOLAN, SR. was a Captain at the Hammond Police Department and lead the investigation of the PUCALIK homicide for several years.

52. Prior to his retirement, SOLAN, SR. maintained the PUCALIK investigative file at his residence.

53. SOLAN, SR. continued to maintain the PUCALIK investigative file at his residence after his retirement.

54. Additionally, while working at the Hammond Police Department, SOLAN, SR. modified the policy and procedures of how investigative reports were to be filed as it pertained to the PUCALIK investigation and the investigations outlined in paragraph 36 above.

55. SOLAN, SR. had complete autonomy as it pertained to these investigations and how the files of the Hammond Police Department were kept.

56. Through SOLAN, SR.'s tenure at the Hammond Police Department, several chiefs were appointed. Those chiefs were Frank Dupey, James Bobowski, Robert Imborek, Ron Matonovich, John Cory and Brian Miller.

57. These chiefs failed to provide adequate supervision of SOLAN, SR. to ensure that constitutional rights of defendants were protected.

58. After his retirement, SOLAN, SR. continued to act as an agent of the City of Hammond.

59. SOLAN, SR. was personally present at several TASKFORCE meetings and provided information regarding the PUCALIK investigation.

60. The Hammond Police Department knew that SOLAN, SR. was present at these meetings and was assisting in the investigation.

61. SOLAN, SR. never turned over the file that he kept at his residence.

## COUNT I:

## 42 U.S.C. § 1983 14th AMENDMENT – DENIAL OF FAIR TRIAL CLAIM AGAINST INDIVIDUALLY NAMED DEFENDANTS

62. Plaintiff realleges paragraphs 1-61 as though fully stated herein.

63. By concealing from HILL the evidence as outlined in paragraph 45 above, the Defendants' concealed material information that was either exculpatory towards HILL's guilt or impeachment evidence that could have been used to question the witnesses' credibility.

64. By concealing said evidence from Hill, the Defendants violated the Fourteenth Amendment, as interpreted by *Brady v. Maryland*, 373 U.S. 83 (1963), which imposed a clear duty on Defendants to report all material exculpatory and impeachment information to a defendant.

65. By concealing said evidence from Hill, the Defendants denied Hill the right to a fair trial as protected by the Fourteenth Amendment.

66. Had said evidence been disclosed to HILL, there is a reasonable probability that the outcome would have been different.

## COUNT II

## 42 U.S.C. § 1983  MONELL CLAIM AGAINST THE FOLLOWING DEFENDANTS: NORTHWEST INDIANA MAJOR CRIMES TASK FORCE;  TOWN OF GRIFFITH; CITY OF HAMMOND; CITY OF PORTAGE; TOWN OF PORTER; CITY OF VALPARAISO

67. Plaintiff realleges paragraphs 1-66 as though fully stated herein.

68. The Defendants specifically named in this Count, by and through its policymakers, created and maintained a custom, policy or practice of deliberate indifference to the constitutional rights of citizens, by failing adequately to train and supervise and discipline its police officers, including individual defendants in this case, to ensure that they:

    a. Properly interview witnesses and alleged victims to ensure that they do not improperly influence the witnesses' and alleged victims' identification of suspects;

    b. Properly document interviews so that other officers who rely on their reports for charging decisions can faithfully represent material facts when seeking probable cause for arrest warrants; and

    c. Properly file reports so that there is a central location where all reports are located to ensure all exculpatory or impeachment evidence is properly disclosed to the defendant;

69. The Defendants' failure to train, discipline and supervise its officers adequately in these constitutional duties directly and proximately caused HILL to suffer constitutional deprivations, including his unfair trial, wrongful conviction, and the other grievous and permanent injuries and damages set forth above.

70. The City of Hammond's failure to supervise and train its officers has resulted in several constitutional violations based upon officers' failure to disclose *Brady* material. Some of these violations include: Larry Mayes, James Hill, Darryl Pinkins, and Roosevelt Glenn.

71. Larry Mayes, James Hill, Darryl Pinkins and Roosevelt Glenn all of have had their convictions overturned as a result of *Brady* violations by SOLAN, SR. and the Hammond Police Department.

## COUNT III:

## 42 U.S.C. § 1983 CONSPIRACY

72. Plaintiff realleges paragraphs 1-71 as though fully stated herein.

73. The constitutional violations as alleged above are the product of a conspiracy by Defendants and other unnamed co-conspirators to cover up the constitutional violations committed by SOLAN, SR. and the City of Hammond which is the product of the lawsuit HILL filed against SOLAN, SR. and the City of Hammond. In order to further the conspiracy, they committed the following overt acts:

    a. Re-opening the investigation of the Pucalik homicide after MAYES won his civil suit against SOLAN, SR. and City of Hammond and HILL's initiation of a federal complaint alleging similar constitutional violations as MAYES;

    b. Having several meetings coordinated and led by SOLAN, SR. regarding the Pucalik investigation which focused on HILL, CATTLETT and MAYES, despite there being other potential suspects;

    c. Re-interviewing of witnesses which included utilizing unduly suggestive improper identification techniques that resulted in improper identifications;

    d.  Suppression of video and audio tapes of interviews that showed witnesses' identifications were either uncertain or the result of undue influence;

    e.  Intentional or deliberate misfiling of reports that showed the development of other suspects so that said reports would not be turned over to HILL;

    f.  Initiation of the prosecution of HILL for the murder of Pucalik;

    g.  Re-initiation of the prosecution of HILL for the murder of Pucalik after SOLAN SR.'s and City of Hammond's efforts to have HILL's pending civil case thrown out were unsuccessful;

74. Defendants conspired with each other and unnamed co-conspirators to violate HILL's civil rights to have him arrested, charged and convicted of Pucalik's homicide in order to negatively impact his ability to prosecute and recover damages in his lawsuit.

## DAMAGES

75. The Defendants' actions deprived HILL of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

76. The unlawful, intentional, willful, deliberately indifferent, reckless and/or bad faith acts and omissions of the Defendants caused HILL to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted and to serve several years in jail and prison for a crime he did not commit.

77. The unlawful, intentional, willful, deliberately indifferent, reckless and/or bad faith acts of the Defendants caused HILL the following injuries and damages: personal injuries, pain and suffering, severe mental anguish, emotional distress, loss of income, infliction of physical illness, inadequate medical care, humiliation, indignities and embarrassment, degradation, permanent loss of natural psychological development, and restrictions on all

forms of personal freedom including but not limited to: diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

78. All the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith, and said acts meet all the standards for the imposition of punitive damages.

**WHEREFORE**, HILL prays as follows:

   a. That the Court award compensatory damages to him and against the Defendants jointly and severally, in an amount to be determined at trial;

   b. That the Court award punitive damages to him, and against all individual Defendants in an amount at a trial, that will deter such conduct by Defendants in the future;

   c. For a jury trial;

   d. For pre-judgement and post-judgement interest and recovery of costs, including reasonable attorney fees pursuant to 42 U.S.C. § 1988; and

   e. For any and all other relief to which he may be entitled.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury for all issues in this complaint.

Respectfully submitted,

_s/_Scott_King_____
Scott King
Attorney for Plaintiff
King & Murdaugh LLC
9211 Broadway
Merrillville, IN 46410
219.769.6300
scott@kingmurdaughlaw.com

_s/_Lakeisha_Murdaugh____
Lakeisha Murdaugh
Attorney for Plaintiff
King & Murdaugh LLC
9211 Broadway
Merrillville, IN 46410
219.769.6300
lakeisha@kingmurdaughlaw.com

_s/_Russell_Brown_____
Russell Brown
Attorney for Plaintiff
The Region Lawyers
9223 Broadway, Ste E
Merrillville, IN 46410
219.750.9380
rbrown@theregionlawyers.com